## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00549-SCT

*APRYL L. PARKERSON*

*v.*

*WAYNE SMITH, VERDA PEARL SMITH, TOWN AND COUNTRY BUILDERS, INC. d/b/a TOWN AND COUNTRY MOBILE HOMES AND CHAMPION HOME BUILDERS CO., INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/2000 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDWARD A. WILLIAMSON |
| ATTORNEYS FOR APPELLEES: | SANDRA S. MOHLER |
| | DAVID M. OTT |
| | DALE GIBSON RUSSELL |
| | MICHAEL O. GWIN |
| | WILLIAM BENNETT CARTER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 3/07/2002 |
| MOTION FOR REHEARING FILED: | 4/5/2002; denied 6/6/2002 |
| MANDATE ISSUED: | 6/13/2002 |

### EN BANC.

### McRAE, PRESIDING JUSTICE, FOR THE COURT:

¶1. Apryl L .Parkerson filed a complaint on May 17, 1999, against Champion Home Builders Co., Inc., and Wayne and Verda Pearl Smith, owners of Town & Country Builders, Inc., d/b/a Town & Country Mobile Homes. The complaint alleged defective manufacture and negligent set-up of Parkerson's mobile home. The defendants made a motion to have the case dismissed and to compel arbitration. Parkerson subsequently filed an amended complaint wherein she alleged that Champion issued an express warranty covering the mobile home; that Verda Pearl Smith had extended certain implied and express warranties to her as a part of the sale and purchase of the mobile home; that by extending Champion's warranties to the plaintiff, Town & Country was acting as Champion's agent; and that the defendants had failed to comply with express and implied warranties arising under Mississippi law and the Magnuson-Moss Warranty Act.

¶2. Even though Champion, the manufacturer, was never a signatory to the finance contract between Parkerson and Town & County concerning the arbitration, the Circuit Court of Neshoba County dismissed the case and compelled arbitration by order dated March 23, 2000. Parkerson timely perfected this appeal. We find that the circuit court erred in dismissing Parkerson's case and requiring her to submit her claims to arbitration as the Magnuson-Moss Warranty Act precluded the Federal Arbitration Act. We further find

that Champion, the manufacturer, never had an agreement to arbitrate; and therefore, it cannot compel arbitration. Therefore, we reverse and remand to the Neshoba County Circuit Court for a trial on the merits.

## FACTS

¶3. On July 1, 1998, Apryl L. Parkerson purchased a Gateway/Advantage Shamrock II mobile home from Town & Country Mobile Homes, Inc., for $61,466.13. As part of this transaction, Parkerson and Verda Pearl Smith of Town & Country signed a contract entitled "Retail Installment Contract, Security Agreement, Waiver of Trial by Jury and Agreement to Arbitration or Reference or Trial by Judge Alone." That agreement provided in pertinent part as follows:

ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:

a. Dispute Resolution. Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO A TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.

b. Arbitration. Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be conducted in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the American Arbitration Association ("AAA") also shall apply....

(emphasis added).

¶4. Verda Pearl Smith and Parkerson signed another document entitled "Manufactured Home Set-Up and Warranty." Champion was not a signatory to this document or the retail installment contract. However, Town & Country also provided Parkerson with a document from Champion entitled "Manufacturer's One Year Manufactured Home Limited Warranty." Parkerson asserts that Wayne and Verda Pearl Smith assured her that they would personally see that all promises and warranties were kept and that Parkerson would be treated fairly.

¶5. Parkerson alleges that her mobile home was delivered and set up in a grossly defective condition. She contends that the Smiths failed to keep their promises of personal attention and that Town & Country and Champion failed to honor their express and implied warranties.

¶6. Parkerson stated in an affidavit that she signed the retail installment contract without reading or understanding any of the language regarding waiver of trial by jury and agreement to arbitration. She asserts that she is not knowledgeable or sophisticated in contract dealings and that none of the preprinted language

on the contract was explained to her. She further contends that when she signed the retail installment contract she was of the understanding that the contract was between herself and Bank America Housing Services. She stated that she "had no idea . . . that any of the language in that contract in any way related to the warranties and promises made by [the Smiths] . . . or the warranties provided through [the Smiths] by Champion Home Builders."

## STANDARD OF REVIEW

¶7. The primary issues raised in this appeal present questions of law. "Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." *Mississippi State Highway Comm'n v. Patterson Enterprises, Ltd.*, 627 So. 2d 261, 263 (Miss. 1993). The standard of review for questions of law is de novo. *Starcher v. Byrne*, 687 So. 2d 737, 739 (Miss. 1997).

## DISCUSSION

¶8. The principal issue before this Court is whether the Magnuson-Moss Warranty Act supercedes the Federal Arbitration Act and, in turn, the arbitration clause of the subject contract, thereby preventing the defendants from invoking arbitration. Additionally, Parkerson asserts that the arbitration clause is unenforceable because it is ambiguous and unconscionable.

¶9. The question of whether the Magnuson-Moss Warranty Act renders binding arbitration clauses in consumer contracts unenforceable is an issue of federal law not yet definitively addressed by the United States Supreme Court. However, to date, nearly every federal court which has addressed the issue has ruled that the Magnuson-Moss Warranty Act prevails over the arbitration clause. *Yeomans v. Homes of Legend, Inc*., 2001 WL 237313 (M.D. Ala. 2001); *Pitchford v. Oakwood Mobile Homes, Inc*., 124 F. Supp. 2d 958 (W.D. Va. 2000); *Raesley v.Grand Housing, Inc*., 105 F. Supp. 2d 562 (S.D. Miss. 2000); *Wilson v. Waverlee Homes,Inc.,* 954 F. Supp. 1530 (M. D. Ala. 1997), *aff'd*, 127 F. 3d 40 (11th Cir. 1997). *See also* *Rhodes v. E. & T. Investments, Inc*., 6 F. Supp. 2d 1322 (M D. Ala. 1998); *Boyd v. Homes of Legend*, 981 F. Supp. 1423 (M.D. Ala. 1997).

¶10. While the Federal Arbitration Act (FAA) does in fact favor the enforcement of arbitration agreements, it appears that it has been superceded by the Magnuson-Moss Warranty Act. A federal statute overrides the FAA where the statute's text or history shows a clear congressional intent to do so, or where there is inherent conflict between compelling arbitration and the purposes of the statute. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27, 107 S.Ct. 2332, 2338, 96 L.Ed.2d 185 (1985). In addition, where statutory provisions are in irreconcilable conflict, the more recently enacted and more specific statute controls over an earlier and more general statute. *HCSC-Laundry v. United States*, 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed. 2d 1(1981). The Magnuson-Moss Warranty Act was enacted approximately 50 years after the FAA, and new legislation must be presumed to have been enacted in light of earlier enactments. *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 862 (9th Cir. 1996).

¶11. The Magnuson-Moss Warranty Act is codified as 15 U.S.C. § 2310(d)(1) (2000), which states that any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." The plain language of the statute indicates that it intends to preserve the right of any consumer to bring a lawsuit for breach of written or implied warranties.

¶12. In ***Raesly v. Grand Housing, Inc.***, 105 F. Supp. 2d 562 (S.D. Miss. 2000), the United States District Court for the Southern District of Mississippi held that the Magnuson-Moss Warranty Act precluded binding arbitration of the written warranties. ***Id.*** at 573. In so doing, the Court relied on, *inter alia*, federal regulations issued by the Federal Trade Commission. 40 Fed.Reg. 60211 (1975) (stating that reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the [Magnuson-Moss Warranty] Act). The ***Raesly*** court also relied on ***Wilson v. Waverlee Homes, Inc.***, 954 F. Supp. 1530 (M.D. Ala. 1997), *aff'd* 127 F.3d 40 (11th Cir. 1997), which has been affirmed by the United States Court of Appeals for the Eleventh Circuit.

¶13. We find the court's analysis in ***Wilson*** to be compelling. There, the court conducted a meticulous analysis of the history of the Magnuson-Moss Warranty Act, as well as the applicable regulations adopted by the Federal Trade Commission. ***Wilson***, 954 F. Supp. at 1537-38. In holding that the binding arbitration clauses violated the Magnuson-Moss Warranty Act, the court found the House report and the remarks of Congressman Moss, one of the sponsors of the bill, particularly enlightening:

> "First, the bill provides the consumer with an economically feasible private right of action so that when a warrantor breaches his warranty or service contract obligations, the consumer can have effective redress. Reasonable attorney's fees and expenses are provided for the successful consumer litigant, and the bill is further refined so as to place a minimum extra burden on the courts by requiring *as a prerequisite to suit* that the purchaser give the [warrantor] reasonable opportunity to settle the dispute out of court, including the use of a fair and formal dispute settlement mechanism...."

> 119 Cong.Rec. 972 (Jan. 12, 1973) (emphasis added). Congressman Moss therefore made clear that the informal dispute settlement mechanisms or procedures are a "prerequisite," not a bar, to suit in court. The House report on the bill makes this point even clearer. The report states that "[a]n adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding." H.R.Rep. 93-1107, 93d Cong., 2d Sess. 41, reprinted in 1974 U.S.C.C.A.N. 7702, 7723. This history reflects that it was Congress's intent that any non- judicial dispute resolution procedures would be nonbinding, and consumers would always retain the right of final access to court.

***Wilson***, 954 F. Supp. at 1538 (emphasis in original) (footnote omitted).

¶14. As previously stated, the district court's decision was affirmed by the United States Court of Appeals for the Eleventh Circuit. ***Wilson v. Waverlee Homes, Inc.*** 127 F.3d 40 (11th Cir. 1997). It is also noteworthy that Chief Judge Thompson's rationale in ***Wilson*** was also followed by Judge DeMent in ***Yeomans v. Homes of Legend, Inc.***, 2001 WL 237313 (M.D. Ala. 2001).

¶15. The Circuit Court of Virginia has also held that the Magnuson-Moss Warranty Act precludes binding arbitration:

> In ***Pitchford***, Judge James H. Michael held that "there can be no agreement at the time of sale to enter into binding arbitration on a written warranty". The clear intent of the Magnuson-Moss Warranty Act, he wrote, "is to encourage alternate dispute settlement mechanisms but to not deprive any party of their right to have their warranty dispute adjudicated in a judicial forum."

***Philyaw v. Platinum Ent., Inc.***, 2001 WL 112107, *2 (Va. Cir. Ct. 2001) (citing ***Pitchford v.***

*Oakwood Mobile Homes, Inc.*, No. 99-CV- 53; VLW 000-3-215 (W.D. W. Va. 2001)).

¶16. In addition, in 1999 the Federal Trade Commission issued a regulation determining that binding pre-dispute arbitration agreements are not enforceable under the Magnuson-Moss Warranty Act. 64 Fed. Reg. 19700, 19708 (1999). When an agency interprets a statute that it is responsible for administering, we must defer to the agency's interpretation so long as the interpretation is reasonable. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984).

¶17. The Magnuson-Moss Warranty Act was enacted more recently than the Federal Arbitration Act and is more specific. The language of the Act clearly indicates that by enacting it, Congress intended to preserve for consumers the right to bring suit for breach of written or implied warranties. Therefore, the Magnuson-Moss Warranty Act has superceded the FAA in regard to breach of consumer warranties, and binding arbitration cannot be compelled in this case without contravening the purposes of the Act. The circuit court therefore erred in dismissing the Smiths and Town & Country, and we therefore reverse and remand Parkerson's claim against the Smiths and Town & Country to the circuit court for a full trial on the merits.

¶18. We also find that the circuit court erred in compelling Parkerson to arbitration against Champion. In *Wilson v. Waverlee Homes, Inc.* 127 F.3d 40 (11th Cir. 1997), Waverlee Homes, the manufacturer, was not a party to the installment sales and financing contracts which contained a clause for final and binding arbitration between the plaintiffs and the seller. *Wilson*, 954 F. Supp. at 1532. Waverlee sought to invoke the arbitration clause, and the district court held that Waverlee, as a nonparty to the agreement containing the arbitration clause, lacked standing to compel arbitration on the warranty claims. *Id.* at 1534.

¶19. Champion is in the same position as Waverlee in *Wilson*. Champion was not a party to the contract containing the arbitration provision, and therefore may not invoke the arbitration clause to which it was never a party. To hold otherwise would allow a manufacturer which is not a signatory to an agreement to assert rights found in that agreement. The *Wilson* court declined to make such a broad interpretation, as do we.

¶20. In *Wilson*, the court pointed out the following language from the contract between Wilson and the seller: "Any controversy or claim between or among you and I or our assignees . . . shall, if requested by either you or me, be determined by arbitration." *Id.* The language found in Parkerson's contract with Town & Country is strikingly similar. The *Wilson* court went on to state that "[n]o stretch of the imagination would be adequate to encompass the concept that the parties to either contract contemplated disputes with non-parties relating to stated and implied warranties." *Id.* The court also noted that the warranty provided by Waverlee, like the warranty provided by Champion in the present case, did not contain an arbitration provision nor did it seek to incorporate by reference the arbitration provisions in the installment sales and financing agreements between Wilson and the seller. *Id.* The court found that "the plaintiffs at no time and in no way agreed with Waverlee to waive their Magnuson-Moss Act rights, nor did they agree with [the seller] to extend such a third-party benefit to Waverlee." Since Parkerson did not knowingly and intelligently waive any rights as to Champion, we find that Champion is precluded from compelling arbitration of Parkerson's express or implied warranty claims against it. We therefore also reverse and remand Parkerson's claim against Champion to the circuit court for a trial on the merits.

## CONCLUSION

¶21. The Magnuson-Moss Warranty Act precludes enforcement of binding arbitration agreements in regard to written or implied consumer warranties. Moreover Champion is precluded from compelling any of Parkerson's claims to arbitration because it was not a signatory to the arbitration provision. Because we are reversing and remanding based on these conclusions, we find it unnecessary to address the additional issue raised by the parties.

¶22. We therefore reverse the circuit court's judgment and remand this case to the Neshoba County Circuit Court for a trial on the merits as to the Smiths and Town & Country, as well as Champion Home Builders.

¶23. **REVERSED AND REMANDED.**

> **DIAZ, EASLEY AND GRAVES, JJ., CONCUR. CARLSON, J., CONCURS IN RESULT ONLY. DIAZ, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., EASLEY AND GRAVES, JJ. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION. PITTMAN, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, J. COBB AND CARLSON, JJ., JOIN IN PART. SMITH, P.J., NOT PARTICIPATING.**

> **DIAZ, JUSTICE, CONCURRING:**

¶24. I concur in the majority's opinion that the circuit court erred in dismissing Parkerson's case and that Parkerson was entitled to a full trial on the merits due to the majority's decision that the Magnuson-Moss Warranty Act supercedes the Federal Arbitration Act. The majority chooses not to address the remaining issues, including, whether the arbitration clause in question is unenforceable because it is unconscionable, and whether the arbitration clause in question violated Parkerson's constitutional right to a trial by jury as provided under Art. 3,§ 24, Miss. Const. (1890). I would address the remaining issues because I believe the manufacturer never had an agreement to arbitrate, and therefore could not compel arbitration.

¶25. First, state contract law defenses such as fraud, duress, and unconscionability remain viable defenses, even where the Federal Arbitration Act controls. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed. 2d 902 (1996). Arbitration can be precluded by the application of ordinary state law principles of contract formation. *Bank One v. Coates*, 125 F. Supp. 2d 819, 827 (S.D. Miss. 2001).

¶26. The arbitration provision in the present case requires Parkerson to pay the attorney's fees and costs should she lose. Furthermore, Rule 51 of the Commercial Rules of the American Arbitration Association, requires that the party initiating the dispute to pay a minimum filing fee of five hundred dollars. Parkerson submitted an affidavit stating that she could not afford to pay the fees required to arbitrate her dispute. The United States Supreme Court has held that large arbitration costs could preclude a litigant from effectively vindicating her statutory rights in arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 521-22, 148 L. Ed.2d 373 (2000). I believe the arbitration clause in the present case is unconscionable because the high costs involved in starting arbitration could have effectively prevented Parkerson from pursuing her dispute.

¶27. In addition, in order to refute Parkerson's claim that the arbitration clause is unconscionable, the defendants must show that "the provision was reasonably related to the business risks of the parties." *Entergy Miss. Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207-08 (Miss. 1998) (quoting *Bank of*

*Indiana, Nat. Ass'n v. Holyfield*, 476 F. Supp. 104, 109 (S.D. Miss. 1979)). The defendants in the present case have not made such a showing, nor have they attempted to do so. For these reasons, I believe the arbitration clause was unconscionable.

¶28. Next, the contract at issue does not validly waive Parkerson's constitutional rights. In order to effectively foreclose Parkerson's access to the courts and strip away her constitutional right to a jury trial, the defendants must demonstrate that Parkerson knowingly, intelligently and voluntarily waived her constitutional rights. *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed. 2d 124 (1972). In *Overmyer*, the United States Supreme Court stated that the waiver provision in that case was bargained for and drafted by two corporations, that there was not unequal bargaining power, the contract was not one of adhesion, and both parties were aware of the significance of the waiver provision. *Id.* at 782. In *Fuentes*, the United States Supreme Court distinguished facts in that case that were a "far cry from those of *Overmyer*." *Fuentes v. Shevin*, 407 U.S. 67, 94-95, 92 S.Ct. 1983, 2001-02, 32 L.Ed. 2d 556 (1972). In *Fuentes*, the parties did not bargain over the contractual terms, there was a large disparity in bargaining power, the waiver provision was on a pre-printed form sales contract and was a necessary condition of the sale, and the appellees made no showing that the appellants understood and were aware of the provision. *Id.*

¶29. In the present case, the terms of the arbitration provision were located on the fourth and fifth pages of the adhesion contract. The defendants made no showing that the Parkersons were fully aware of the significance and consequences of the language in this provision. Furthermore, the arbitration provision was pre-printed on a form contract which was a necessary condition of the sale, and there was a great disparity in the bargaining power between the parties. For these reasons, I believe the contract contained an invalid arbitration clause.

¶30. I concur with the majority's opinion. However, in addition and in consideration of the reasons set forth above, I would address the remaining issues that are before this Court. I would state that the contract was unconscionable because Parkerson could not have afforded to pay the costs of arbitration, and that the contract was invalid because the defendants failed to show that Parkerson knowingly, intelligently and voluntarily waived her right to pursue her claim in court.

**McRAE, P.J., EASLEY AND GRAVES, JJ., JOIN THIS OPINION.**

**COBB, JUSTICE, DISSENTING:**

¶31. I respectfully dissent. The majority has concluded that the Magnuson-Moss Warranty Act (Magnuson-Moss) supercedes the Federal Arbitration Act (FAA), and that the arbitration agreement is unconscionable. Because I conclude that Magnuson-Moss does not supercede the FAA, and that Champion and the Smiths should be allowed to compel arbitration, I would affirm in part the judgment of the trial court. However, because this Court lacks sufficient information to determine whether the arbitration clause is unconscionable, I would remand to the trial court for further proceedings on that issue, consistent with this opinion.

**I. WHETHER THE MAGNUSON-MOSS WARRANTY-FEDERAL TRADE COMMISSION IMPROVEMENT ACT PREVENTS APPELLEES FROM INVOKING ARBITRATION, THEREBY PERMITTING A TRIAL BY JURY, AT THE ELECTION OF APRIL [SIC] PARKERSON.**

¶32. In 1925, Congress enacted the Federal Arbitration Act, 9 U.S.C.A. §§ 1 , et seq., creating a federal policy in favor of alternative dispute resolution. Later the Supreme Court stated: "The Act, after all, does not mandate the arbitration of all claims, but merely the enforcement--upon the motion of one of the parties--of privately negotiated arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S.Ct. 1238, 1242, 84 L.Ed. 158 (1985). In discussing the legislative history of the FAA, the Supreme Court stated: "The House Report accompanying the Act makes clear that its purpose was to place an arbitration agreement 'upon the same footing as other contracts, where it belongs,' H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924), and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate."*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. at 219-20. Section 2 of the FAA states that written arbitration provisions in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (2001). Further, the court must compel a party to such a contract to submit to arbitration proceedings: "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4 (2001).

¶33. In Mississippi, for most of this century, there were two lines of case law concerning arbitration. One line of cases-relying on either public policy concerns or the courts jealously guarding the exclusiveness of their jurisdiction-exhibited a hostility towards pre-dispute binding arbitration agreements:

> It is settled at common law that a general agreement, in or collateral to a contract, to submit to final determination by arbitrators the rights and liabilities of the parties with respect to any and all disputes that may thereafter arise under the contract is voidable at will by either party at any time before a valid award is made, and will not be enforced by the courts, because of the rule that private persons cannot, by a contract to arbitrate, oust the jurisdiction of the legally constituted courts.

*Machine Prods. Co. v. Prairie Local Lodge No. 1538 of Int'l Ass'n of Machinists, AFLCIO*, 230 Miss. 809, 94 So.2d 344, 348 (1957)). However, there was another line of case law concerning arbitration that had co-existed concurrently in this state:

> This state, as a matter of public policy, has long allowed parties to arbitrate their differences and to give effect to an arbitration award. *Scottish Union & Nat'l Ins. Co. v. Skaggs*, 114 Miss. 618, 75 So. 437, 438 (1917). "That policy has even greater force in our present era of overcrowded judicial dockets. If there be any type of arbitration award we should loathe to disturb, it should be that between private contracting parties respecting a matter of interest only to themselves and their respective pocket books." *Craig v. Barber*, 524 So.2d 974, 977 (Miss.1988). In *Hutto v. Jordan*, 204 Miss. 30, 36 So.2d 809, 812 (1948), this Court stated:

> Articles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings.

*I. P. Timberlands Operating Co. v. Denmiss Corp.*, 726 So.2d 96, 103-04 (Miss. 1998).

¶34. This dichotomy was dispelled in 1998, when this Court handed down *I.P. Timberlands*: "This Court hereby overturns the former line of case law that jealously guarded the court's jurisdiction." *Id*. at 104. We went on to say:

"In enacting § 2 of the Arbitration Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. Congress has thus mandated the enforcement of arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1(1984). The Arbitration Act, resting on Congress's authority under the Commerce Clause, creates a body of federal substantive law that is applicable in both state and federal courts. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "The sine qua non of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 813 n.4 (4th Cir.1989).

Doubts as to the availability of arbitration must be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "[U]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted."

*I.P. Timberlands*, 726 So.2d at 107. Recently, in *Smith Barney, Inc. v. Henry*, 775 So.2d 722 (Miss. 2001), this Court discussed and reaffirmed that decision:

We overturned prior case law and "expressly stated that this Court will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution." We reiterated our policy that "[a]rticles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings."

*Id.* at 724 (citations omitted).

¶35. While this Court has recently joined the rest of the nation in adopting a non-hostile, positive posture towards pre-dispute arbitration agreements, neither the United States Supreme Court, nor this Court, has specifically dealt with the issue of whether Magnuson-Moss supercedes the FAA.

¶36. In *Raesly v. Grand Housing, Inc.*, 105 F. Supp.2d 562 (S.D. Miss. 2000), the United States District Court for the Southern District of Mississippi, Judge Tom Lee, held that the plaintiffs were compelled to submit their implied warranty claims to binding arbitration; however, not their claims for breach of an express written warranty. *Id.* at 573-74. The court stated:

the court is aware that a number of courts (primarily Alabama state and federal courts) have expressly held that while an agreement for binding arbitration may be enforced on claims for breach of non-written warranties and implied warranties, *binding* arbitration of written warranties, in transactions to which the Magnuson-Moss Warranty Act applies, is forbidden by that Act. *See Southern Energy Homes, Inc. v. Lee*, 732 So. 2d 994, 999-1000 (Ala. 1999)(holding that "the general provisions of the [FAA] are superseded by the subsequent and specific provision in the Magnuson-Moss Act by which Congress has prohibited the inclusion in written warranties of clauses calling for binding arbitration."). . ..

*Id.* at 573. However, one of the cases specifically relied upon by Judge Lee has since been overruled. In

***Southern Energy Homes, Inc. v. Ard***, 772 So.2d 1131 (Ala. 2000), the Alabama Supreme Court expressly overruled the majority opinion in ***Lee*** and held that the Magnuson-Moss Act does not invalidate arbitration provisions, even in a written warranty. ***Id.*** at 1135. In ***Ard***, the court adopted Justice See's previous dissent in ***Lee,*** where he had argued that the text of the Magnuson-Moss Act does not expressly preclude arbitration, that the legislative history of the Act does not express a clear intent to preclude enforcement of the FAA, and that there is no irreconcilable conflict between arbitration and the purposes of the Act. ***Id.***

¶37. Since ***Lee*** was overruled, the United States District Court for the Southern District of Mississippi has had the opportunity to revisit this issue and now follows the same rationale as the ***Ard*** court. In a factually similar case, Judge Dan Russell, by order, granted a motion to compel arbitration, examined ***Raesly*** in light of the subsequent decision in ***Ard***, and stated as follows:

> The undersigned is of the opinion that because Judge Lee's opinion in ***Raesly*** was based upon the decision of the Supreme Court of Alabama which has been recently overruled, the ***Raesly*** opinion is not persuasive. The undersigned agrees with the well-reasoned opinion of the Supreme Court of Alabama in ***Ard***, and accordingly, finds that the Magnuson Moss Act does not invalidate arbitration provisions in a written warranty. For this reason, the undersigned is of the opinion that the motion to compel arbitration and stay proceedings should be granted.

***Vice v. Classic Homes of Gautier, Inc***, No. 1:99CV432RG (S.D. Miss. July 21, 2000).

¶38. The Texas Supreme Court has also recently dealt with this issue for the first time. In ***In re American Homestar of Lancaster, Inc.***, 50 S.W.3d 480 (Tex. 2001), the Texas court, in its well-reasoned opinion, first discussed the historical conflict between the FAA and other federal statutes:

> For many years, the Supreme Court did not favor enforcing arbitration agreements. In 1953, holding that a claim under the Securities Act of 1933 could not be arbitrated, the Court opined that arbitration was an inadequate forum in which to enforce such a statutory claim. ***Wilko v. Swan***, 346 U.S. 427, 435-37, 74 S.Ct. 182, 98 L.Ed.168 (1953), overruled by ***Rodriguez de Quijas v. Shearson/American Express, Inc.***, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).
>
> But the Supreme Court has since abandoned that view. In fact, since 1985, the Supreme Court has consistently upheld agreements to arbitrate federal statutory claims under the FAA. See ***Gilmer***,[1] 500 U.S. at 35, 111 S.Ct. at 1647 (Age Discrimination in Employment Act of 1967); ***Rodriguez de Quijas***, 490 U.S. at 481, 109 S.Ct. 1917 (Securities Act of 1933); ***McMahon***,[2] 482 U.S. at 238, 241, 107 S.Ct. 2332 (Securities and Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); ***Mitsubishi Motors Corp.***[3], 473 U.S. at 640, 105 S.Ct. 3346 (Sherman Antitrust Act). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum rather than a judicial, forum." ***Mitsubishi Motors Corp***., 473 U.S. at 628, 105 S.Ct. 3346. Moreover, the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." ***McMahon***, 482 U.S. at 226, 107 S.Ct. 2332.

***Homestar***, 50 S.W.3d at 484-85.[4]

¶39. The Texas court next noted the United States Supreme Court's test for determining whether a federal

statute overrides the FAA's directive to enforce arbitration agreements; namely, the party opposing arbitration must show a clear congressional intent to override the FAA's mandate. *Homestar*, 50 S.W.3rd at 485 (citing *McMahon*, 482 U.S. at 227, 107 S.Ct. at 2332). "According to the Supreme Court, this congressional intent must be evidenced in the statute's text or history or through an inherent conflict between arbitration and the statute's purposes." *Id.* (citing *McMahon*). After a lengthy, persuasive, in-depth analysis, the Texas court concluded there is "nothing in the Magnuson-Moss Act's text, legislative history, or purposes that preclude enforcement of predispute binding arbitration agreements under the FAA . . .." *Id.* at 490.

¶40. I agree and conclude that the Magnuson-Moss Act does not pre-empt or supersede the Federal Arbitration Act, thus I would affirm the trial court on this issue.

### II. WHETHER A MEETING OF THE MINDS TOOK PLACE DUE TO THE ARBITRATION CLAUSE'S AMBIGUOUS LANGUAGE.

¶41. Parkerson asserts that the arbitration agreement found in the retail installment contract is ambiguous and that, therefore, no "meeting of the minds" took place regarding the arbitration clause. ¶42. In *IP Timberlands*, we noted that "[w]here a contract is clear and unambiguous, its meaning and effect are matters of law which may be determined by the court." *IP Timberlands*, 726 So. 2d at 106 (citing *Pfisterer v. Noble*, 320 So. 2d 383, 384 (Miss. 1975)). We further stated:

> Ambiguity of a contract, or its terms and a contract's meaning and effect are issues of law that are reviewed de novo by this Court. *Whittington*, 608 So. 2d at 1274. This Court must construe the agreement as made by the parties and give the words of the document their commonly accepted meaning. If no ambiguity exists, this Court will accept the plain meaning of the instrument as the intent of the parties. Contracts are solemn obligations and the Court must give them effect as written.

*Id.* at 108.

¶43. In *Raesly*, the district court considered and rejected the plaintiff's ambiguity argument. *Raesly*, 105 F. Supp. 2d at 567. The arbitration agreement at issue in *Raesly* was embodied in a document separate from the other documents involved with the sale of the mobile home. *Id.* at 564-65. The court held that "[e]ven assuming for the sake of argument that this language creates ambiguity as to the scope of the arbitration agreement, that does not preclude the court from compelling arbitration." *Id.* at 571. The court based its decision in part on the United States Supreme Court's holding that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. A finding that the scope of the arbitration clause is vague does not automatically catapult the entire dispute into arbitration. Rather, such a finding creates a presumption in favor of arbitration. *Id.* at 571-572 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983)).

¶44. In the case sub judice, Parkerson signed a clear and unambiguous agreement which provided for arbitration of "any controversy or claim . . . arising out of or relating to this contract or any agreements or instruments relating to or delivered in connection with this contract. . . ." The agreement appears to be a standard arbitration clause very similar to those deemed unambiguous in *Raesly* and other cases. Therefore, I find no merit to this argument and would affirm the trial court on this issue.

## III. WHETHER THE ARBITRATION AGREEMENT IS UNCONSCIONABLE.

¶45. Parkerson claims that the arbitration agreement is unconscionable because: there was no discussion of the fact that there was a binding arbitration clause when she signed the documents; there was no negotiation -- it was presented on a take-it-or-leave-it basis; and she was not given an opportunity to know and understand the its terms. Parkerson claims she is not knowledgeable or sophisticated in business dealings and lacks business acumen. In effect, Parkerson is arguing that the arbitration agreement is "procedurally" unconscionable.

¶46. "Unconscionability has been defined as 'an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.'" *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So.2d at 1207. This Court has said that a contract is unconscionable if it is "one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other." *Terre Haute Cooperage v. Branscome*, 203 Miss. 493, 503, 35 So.2d 537, 541 (1948).

¶47. In determining whether a contract is procedurally unconscionable, the court will look to the formation of the contract:

> The indicators of procedural unconscionability generally fall into two areas: (1) lack of knowledge, and (2) lack of voluntariness. A lack of knowledge is demonstrated by a lack of understanding of the contract terms arising from inconspicuous print or the use of complex, legalistic language, disparity in sophistication of parties, and lack of opportunity to study the contract and inquire about contract terms. A lack of voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.

*Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So.2d at 1207. "Procedural unconscionability is most strongly shown in contracts of adhesion presented to a party on a take it or leave it basis." *Id.* at 1208.

¶48. In *Raesly*, a procedural unconscionability argument similar to Parkerson's was presented and rejected by the district court. The plaintiffs, in *Raesly*, argued that they were hurriedly presented numerous papers with no explanation of the terms and agreements. However, the *Raesly* court noted:

> The arbitration provision/agreement was not buried in the fine print, or otherwise hidden from them but rather was presented to them as a separate document headed by the word "**ARBITRATION**" in large, bold letters which are easy to read simply by glancing at the document. And although plaintiffs claim that no one explained to them that by signing the document they would be giving up their right to go to court and their right to a jury trial, the document plainly recites, in bold, conspicuous print, "**THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE.**" Plaintiffs do not claim to be illiterate and in fact, both have high school diplomas and are able to read.
>
> . . . . . .

And they do not claim that they were actually prevented from reading the document. Rather, their position apparently is simply that the salesman downplayed the importance of the document.

. . . . . .

For all of these reasons, the court finds no procedural unconscionability in the arbitration clause.

*Raesly*, 105 F. Supp. 2d at 568-69.

¶49. The same reasoning applies in the case sub judice. While Parkerson claims she did not read the document, she does not claim that she was prevented from reading it. Further, though she claims she did not understand she was signing a binding arbitration agreement, she cannot deny that the very title of the agreement which she signed, printed in large, bold letters, was:

> **RETAIL INSTALLMENT CONTRACT, SECURITY AGREEMENT, WAIVER OF TRIAL BY JURY AND AGREEMENT TO ARBITRATION OR REFERENCE OR TRIAL BY JUDGE ALONE**

Also, the arbitration provision itself was presented in large, bold letters that are easy to read simply by glancing at the document:

> **YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.**

¶50. Thus, though Parkerson alleges lack of knowledge, lack of voluntariness, and disparity in sophistication and bargaining power in a contract of adhesion, the record tends to indicate otherwise. Concerning Parkerson's argument that the contract was presented on a take-it-or-leave-it basis, with no negotiation, this is easily refuted by the fact that the warranty itself has apparently been modified in at least two different places. First, the paragraph entitled "Connections" that requires the customer to make the electric, water, and sewage connections has been crossed through. Second, in the margin next to where it says "Heating System," there is handwritten scribble that says, "5 yr. parts."

¶51. Concerning Parkerson's argument that she did not read the contract and didn't understand all its terms, this Court has stated:

> To permit a party when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.

*Busching v. Griffin*, 542 So. 2d 860, 865 (Miss. 1989); *see also* *Hicks v. Bridges*, 580 So. 2d 743, 746 (Miss. 1991) (holding that a person "cannot avoid a signed, written contract on the grounds that he did not read it").

¶52. Whether or not Parkerson discussed, actually read, or understood every term of the contract should not be dispositive of this issue. The fact is, there is no allegation that she was prevented from doing any of these things. If this Court were to nullify every contract in which one party failed to discuss or read the

contract, or did not understand every term contained therein, it would destroy the value of all contracts. I do not find the arbitration agreement procedurally unconscionable. There is no merit to Parkerson's argument on this issue, and I would affirm the trial court on this issue.

### IV. WHETHER THE CLAIMANT IS EFFECTIVELY LOCKED OUT OF INSTITUTING ARBITRATION DUE TO THE HIGH COSTS OF EXERCISING SUCH A MECHANISM.

¶53. Parkerson further asserts that her inability to pay the costs of arbitration effectively leaves her without a forum in which to bring her suit. She claims she would be forced to hurdle many financial barriers such as the arbitrator's fee, the initial filing fee of at least $500, plus court reporting costs, transcription fees, witness expenses, and hearing room fees. In her affidavit she claims she does not have the funds to pay all of these fees.[5] In effect, she is claiming that the arbitration agreement is "substantively unconscionable."

¶54. While procedural unconscionability goes to the formation of the contract, substantive unconscionability goes to its actual terms. "Plaintiff may prove substantive unconscionability if she prove the terms of the arbitration clause were oppressive." *Smith v. EquiFirst Corp.*, 117 F.Supp.2d 557, 560 (S.D. Miss. 2000).

¶55. It is important to note that the Commercial Rules of the American Arbitration Association, which the contract signed by Parkerson specifically states "shall apply", contain a provision for the reduction or deferment of the fees in the event of extreme hardship.

### § 176:48 Administrative fees.

. . . . . .

The filing fee shall be advanced by the initiating party or parties, subject to final apportionment by the arbitrator in the award.

The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

¶56. While Parkerson claims that she was unable to afford the arbitration fees, there is no indication that she ever made an effort to avail herself of the benefits of this provision in the Rules.

¶57. Next, while it does not appear this Court has specifically dealt with the issue of the alleged inability of a party to afford the arbitration costs as a reason to find substantive unconscionability, courts in other jurisdictions have.

¶58. In *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 980 (2nd Cir. 1996), two Subway franchisees sought to invalidate an arbitration clause in their contract, claiming it was unconscionable due to the high cost of pursuing their claim via arbitration. In rejecting this argument, the Second Circuit said, "the purpose of the unconscionability doctrine is to prevent unfair surprise and oppression, . . . [they] were on notice that they were at least liable for their own costs in the arbitration proceedings, . . . Certainly they could have inquired about the typical fees charged by the AAA and its arbitrator." *Id.* at 980-81.

¶59. In *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 159 (2nd Cir. 1998), once again a Subway

franchisee challenged an arbitration clause because of, inter alia, its alleged prohibitive cost. The court held that, "there was nothing unconscionable about the arbitration clause because it clearly explained both the parties' responsibility for their own costs, which the franchisee was free to investigate before entering into the agreement . . .." *Id.* at 163.

¶60. However, other circuits have looked at the inability of the plaintiff to pay the cost of arbitration differently. In *Shankle v. B-G Maint. Mgmt. of Col., Inc.*, 163 F.3d 1230, 1232 (10th Cir. 1999), Shankle, a former employee of B-G, brought an action under Title VII, the Americans with Disability Act, and the Age Discrimination in Employment Act. B-G filed a motion to compel arbitration. *Id.* In affirming the district court's denial of the motion, the Tenth Circuit held:

> In this case, Mr. Shankle signed the Agreement as a condition of continued employment. The Agreement requires Mr. Shankle to arbitrate all disputes arising between he and his former employer. In order to invoke the procedure mandated by his employer, however, Mr. Shankle had to pay for one-half of the arbitrator's fees. Assuming Mr. Shankle's arbitration would have lasted an average length of time, he would have had to pay an arbitrator between $1,875 and $5,000 to resolve his claims. Mr. Shankle could not afford such a fee and it is unlikely other similarly situated employees could either. The Agreement thus placed Mr. Shankle between the proverbial rock and a hard place- it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum. Essentially, B-G Maintenance required Mr. Shankle to agree to mandatory arbitration as a term of continued employment, yet failed to provide an accessible forum in which he could resolve his statutory right.

*Id.* at 1234-35 (citations omitted). *See also Cole v. Burns Int'l. Sec. Servs.*, 105 F.3d 1465, (D.C. Cir. 1997) ("it would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court"); *Rollins, Inc. v. Foster*, 991 F.Supp. 1426, 1437 (M.D.Ala. 1998) ("When a party who is in such an inferior bargaining position, . . . is compelled to assert her claims in arbitration, thus precluding a remedy in the less expensive public fora, and the costs of the arbitral forum render the party unable to pursue her claim, the clause is oppressive and one-sided and therefore unconscionable.").

¶61. In *Paladino v. Avnet Computer Technologies, Inc*., 134 F.3d 1054, 1056 (11th. Cir. 1998), a case similar to *Shankle,* a former employee brought a Title VII action against her former employer. The employer then filed a motion to stay proceedings and compel arbitration, which the district court denied. *Id.* In affirming the decision, the Eleventh Circuit noted that "employees may be liable for at least half the hefty cost of an arbitration and must, according to the American Arbitration Association rules the [arbitration] clause explicitly adopts, pay steep filing fees (in this case $2000). *Id.* at 1062. "We consider costs of this magnitude a legitimate basis for a conclusion that the clause does not comport with statutory policy." *Id.* Further:

> Arbitration ordinarily brings hardships for litigants along with potential efficiency. Arbitral litigants often lack discovery, evidentiary rules, a jury, and any meaningful right to further review. In light of the strong federal policy favoring arbitration, these inherent weaknesses should not make an arbitration clause unenforceable. [Citing *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)]. But a clause such as this one that deprives an employee of any hope

of meaningful relief, while imposing high costs on the employee, undermines the policies that support Title VII. It is not enforceable.

*Id.*

¶62. Finally, in ***Randolph v. Green Tree Fin. Corp.-Alabama***, 178 F.3d 1149, 1150 (11th Cir. 1999), the purchaser of a mobile home appealed the district court's order compelling arbitration of her claim against the company that had financed that purchase. The Eleventh Circuit reversed, finding the arbitration clause unenforceable because:

> This clause says nothing about the payment of filing fees or the apportionment of costs of arbitration. It neither assigns an initial responsibility for filing fees or arbitrators' costs, nor provides for a waiver in cases of financial hardship. . . . It does not say whether the rules of the American Arbitration Association, which provide at least some guidelines concerning filing fees and arbitration costs, apply to the proceeding, whether some other set of rules applies, or whether the parties must negotiate their own set of rules.

*Id.* at 1158. On appeal, the Supreme Court reversed because the Court of Appeals erred in deciding that the arbitration agreement's silence with respect to costs and fees rendered it unenforceable. ***Green Tree Fin. Corp.-Alabama v. Randolph***, 531 U.S. 79, 92, 121 S.Ct. 513, 523, 149 L.Ed 373 (2000). However, the Supreme Court went on to say:

> It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed it contains hardly any information on the matter. . . . The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

*Id.* at 90-91, 121 S.Ct. at 522. Thus the Supreme Court conceded that the cost of arbitration could render a arbitration clause unenforceable, but held that the record in that case did not reveal enough information to make such a determination. However, concerned that some parties might be unable to afford the costs associated with arbitration, courts have responded.

¶63. In ***Dobbins v. Hawk's Enters.***, 198 F.3d 715, 716 (8th Cir. 1999), the purchasers of a mobile home that was allegedly delivered with substantial damage filed suit in the United States District Court for the Eastern District of Arkansas, claiming damages under multiple legal theories, including the Truth in Lending Act. The defendants filed a motion to stay the federal court proceeding and compel arbitration, which the district court granted. *Id.* The Dobbins filed a motion to lift the stay on the basis that the fees imposed by the AAA, and their inability to pay those fees prevented them from effectively asserting their claims. *Id.* After an evidentiary hearing, the district court lifted the stay, reopened the case, and found that the arbitration fees precluded the Dobbins from availing themselves of the arbitral forum. *Id.* The defendants appealed and the Eighth Circuit reversed and remanded with instructions:

> As the district court noted in its order, courts across the country have begun to recognize the potential that arbitration fees will make an arbitration agreement unconscionable. We agree with those courts

that the potential is present. However, whether or not arbitration fees make the agreement to arbitrate unconscionable is something that must be determined on a case-by-case basis in light of the state law governing unconscionability.

In this case, the Dobbinses claim that the final fee determination they received from the AAA was $23,000. The district court found this fee to be oppressive and therefore granted the stay. The AAA, however, has a fee waiver procedure. It decides whether or not to waive, in whole or in part, a fee on the basis of a claimant's financial situation. It is clear, however, from our reading of the evidentiary hearing transcript, that the Dobbinses never fully explored the AAA's fee waiver procedures because Mr. Dobbins refused to provide his family's financial information to the AAA. This is an important step that must be taken before an unconscionability determination can be made.

Therefore, in an effort to foster the policy in favor of arbitration, we reverse and remand this case with directions to order the Dobbinses to present a reduced demand for damages and to seek a diminution or a waiver of fees from the AAA. The district court also should retain jurisdiction over the case to determine if the fee, if not waived all together, is lowered to a reasonable amount. If the district court finds that the fee is unreasonable given the current financial situation of the Dobbinses, the district court should accept the appellant's offer to pay the arbitration fees.

*Id.* at 717.

¶64. I find the rationale and remedy of the ***Dobbins*** court persuasive. While Mississippi has joined the rest of the nation in embracing a policy favoring arbitration, an arbitration agreement that would effectively leave a consumer without a forum to effectively redress his or her grievances should not be embraced. However, the determination as to whether or not an arbitration clause in a contract is substantively unconscionable, because it is cost prohibitive, can only be made on a case-by-case basis. While Parkerson claims, on appeal, she is unable to afford the fees associated with arbitration, she did not make such a claim in her initial complaint or amended complaint. Parkerson did file an affidavit with the circuit court claiming she did not have the funds with which to pay the costs associated with arbitration. However, the trial judge failed to make findings of facts on this issue, nor did he discuss this issue in his final order. Therefore, the evidence in the record is insufficient for this Court to make such a determination as well.

¶65. In ***Quinn v. EMC Corp***., 109 F.Supp.2d 681, 685-86 (S.D. Tex. 2000), the United States District Court for the Southern District of Texas stated: "Even if the Court were convinced that Plaintiff cannot afford to pay for the arbitration proceeding, the better solution would be to nullify the fee provisions of the arbitration agreement and have Defendant EMC shoulder the expense. Plaintiff's proposed solution-- abrogation of the entire arbitration agreement--is unnecessarily radical."[(6)]

¶66. I agree, and therefore would remand on this issue, with directions to the circuit court to order Parkerson to first seek a deferment or reduction of fees from the AAA. The circuit court should retain jurisdiction over this case, as was done in ***Dobbins****,* supra. Upon ascertaining the actual cost of the arbitration to be conducted in this case, the trial judge should then make a determination, on the record, as to whether the cost of arbitration, in light of Parkerson's financial situation, still prevents her from affording arbitration. If the circuit court so determines, it may consider ordering Town & Country and Champion to pay part or all of the fees, or it may find that the arbitration clause is unenforceable due to the unconscionability of the cost of arbitration.

### V. WHETHER UNDER THE TERMS OF THE RETAIL INSTALLMENT CONTRACT,

**THE ARBITRATION CLAUSE APPLIES ONLY TO THE RETAIL INSTALLMENT CONTRACT.**

¶67. At the heart of this issue is the fact that Parkerson signed several sets of papers, when purchasing her mobile home. Parkerson claims the arbitration clause was located in the retail installment contract; therefore, it only applies to the retail installment contract and problems that might arise concerning financing. Since her claims are based in warranty and negligence, the arbitration clause is ineffective.

¶68. However, the plain language of the arbitration agreement states, "**Any controversy or claim** between or among you and me or our assignees **arising out of or relating to this contract or any agreements or instruments relating to or delivered in connection with this contract**, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration. . . ." (emphasis added). Clearly, the language of arbitration agreement means that warranty claims are subject to arbitration.

¶69. In *Raesly*, the plaintiff similarly signed separate documents: namely a purchase agreement, an installment contract and an arbitration agreement. *Raesly*, 105 F.Supp.2d at 567. The plaintiff argued that the arbitration agreement was not enforceable because it was not part of the main contract or the purchase agreement. *Id.* In rejecting that argument, the Fifth Circuit said:

> The fact that the arbitration provision/agreement was presented, while contemporaneously, on a separate page or as a separate document does not detract from the plain and inescapable fact that the arbitration provision was presented to and signed by the plaintiffs as part of their agreement respecting the purchase of the subject mobile home and is therefore enforceable, unless some other cognizable ground exists for invalidating the putative agreement.

*Id.* I conclude that this argument is without merit, and would affirm the trial court on this issue.

**VI. WHETHER CHAMPION, THE MANUFACTURE, AND THE SMITHS, IN THEIR INDIVIDUAL CAPACITY, AS NON-SIGNATORIES TO THE AGREEMENT, CAN COMPEL ARBITRATION.**

¶70. In her reply brief, Parkerson discusses the issue of whether a non-signatory to the agreement can compel arbitration in conjunction with the issue of waiver of the right to a jury trial. Because I conclude these issues are not too intimately intertwined, I will discuss them separately.

¶71. As discussed in issue V, the arbitration clause is located in the financing agreement. Parkerson argues that because Champion is not a signatory or an assignee of the agreement, it cannot compel arbitration. The seller is specifically designated in the signature block as Town & Country. Further, Verda Smith clearly signed in her official capacity as an employee of Town & Country, and Wayne Smith is not mentioned anywhere in the contract and did not sign the contract. Neither are they assignees or parties to the financing agreement.

¶72. Parkerson relies heavily on *Southern Energy Homes, Inc. v. Gary*, 774 So.2d 521 (Ala. 2000), *Isbell v. Southern Energy Homes, Inc.*, 708 So.2d 571 (Ala. 1997), and *Wilson v. Waverlee Homes*, 954 F. Supp. 1530 (M.D. Ala. 1997). However, as will be seen, Alabama courts have been on both sides of this issue. As one writer has observed, the Alabama courts reached "glaringly different conclusions on the non-signatory issue" in four cases handed down in 1996, and "continued this trend of apparent contrariety"

in three more decisions handed down in 1997. Patricia J. Ponder, *Alabama's Arbitration Cases: Where Does the Non-Signatory Stand?*, 58 Ala. Law. 246, 246 (July 1997). "Examining these cases in chronological order, the Alabama Supreme Court's handling of the nonsignatory question may suggest a case of 'one step forward, two steps back.'" *Id.* The writer concluded:

> Upon closer analysis, however, the cases may suggest an increasing acknowledgment of federal principles which would favor the non-signatory's right to compel arbitration, by focusing more on the implicated agency relationships and claims asserted than on the narrow language of the underlying contract. Under the federal authorities, agency and equitable principles will generally apply to favor arbitration where a plaintiff is invoking identical claims against joint defendants and proceeding on a theory that one is the agent for purposes of its allegations against all.

*Id.* Fortunately, the rest of the country has not suffered from the same case of schizophrenia as the Alabama courts have suffered from in addressing this issue. Champion claims in its brief that "[a]s a direct outgrowth of the strong public policy favoring arbitration embodied in the Federal Arbitration Act, virtually every federal and state appellate court in the country to consider whether a nonsignatory to an arbitration provision can enforce a right to arbitrate has recognized such a right under the federal doctrine of equitable estoppel, as well as general principles of agency and contract."

¶73. The First Circuit Court of Appeals in *Hilti, Inc. v. Oldach*, 392 F.2d 368, 369 n.2 (1st Cir. 1968) stated: "If arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised."

¶74. The Second Circuit in *Interocean Shipping Co. v. National Ship. & Trad. Corp.*, 523 F.2d 527, 539 (2nd Cir. 1975) said: "mere fact that a party did not sign the arbitration agreement does not mean that it cannot be held bound by it. Ordinary contract principles determine who is bound. In an appropriate situation, the corporate veil may be pierced and a party may be held bound to arbitrate as the signatory's alter ego."

¶75. The Third Circuit in *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc*., 998 F.2d 145, 155 (3rd Cir. 1985) said "'[s]ince the non-parties to this arbitration agreement have related and congruent interests with the principals to the litigation,' we would uphold the district court's decision to enforce the arbitration clause."

¶76. The Fourth Circuit in *Long v. Silver*, 285 F.3d 309, 316-17 (4th Cir. 2001) concluded that equitable estoppel permits nonsignatory shareholder to invoke corporation's arbitration agreement and compel arbitration.

¶77. The Fifth Circuit in *Grigson v. Creative Artists Agency*, *L.L.C,* 210 F.3d 524, 527 (5th Cir. 2000) determined that nonsignatory could compel arbitration under the theory of equitable estoppel.

¶78. The Sixth Circuit in *Arnold v. Arnold Corp.-Printed Communications for Bus.*, 920 F.2d 1269 (6th Cir. 1990) noted that "Other circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Id.* at 1282. "We therefore will follow the well-settled principle affording agents the benefits of arbitration agreements made by their principal and affirm the district court's decision on this issue." *Id.*

¶79. The Seventh Circuit in *In re Oil Spill by Amoco Cadiz Off Coast of France March 16, 1978*,

659 F.2d 789, 796 (7th Cir. 1981) held: "Having alleged an agency relationship as a basis for its standing in the suit, it cannot slough off that relationship at will. It would advance neither judicial economy nor the purposes of the federal arbitration act to permit International to assert in a judicial forum claims grounded upon its alleged relationship to Transport and to allow it to disavow the relationship for purposes of arbitration, or to allow Transport to defeat the effect of an arbitration agreement by joining a nonsignatory as a party-plaintiff in its complaint."

¶80. The Eighth Circuit in ***Dominium Austin Partners, L.L.C., v. Emerson***, 248 F.3d 720, 728 (8th Cir. 2001) concluded that "It would be inequitable to allow appellants to claim that these parties are liable for failure to perform under a contract and at the same time to deny that they are contractual parties in order to avoid enforcement of the arbitration clause."

¶81. The Ninth Circuit in ***Letizia v. Prudential Bache Secs.***, 802 F.2d 1185 (9th Cir. 1986) noted that "Other circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." ***Letizia.***, 802 F.2d at 1187. "Several courts have addressed the problem of nonsignatories in cases factually similar to this one." ***Id.*** at 1188. "In virtually every case, they have held the brokerage firm employees bound by the arbitration agreement." ***Id.*** "We find the majority view persuasive." ***Id.***

¶82. The Eleventh Circuit in ***MS Dealer Serv. Corp. v. Franklin***, 177 F.3d 942 (11th Cir. 1999), eventually came to the same conclusion, after a slight detour. Previously, in ***Wilson v. Waverlee Homes***, the federal court for the middle district of Alabama dealt with a situation, seemingly similar to the one in case the case subjudice. Waverlee Homes, the manufacturer, was not a signatory to the contracts that contained the arbitration agreement. ***Wilson***, 954 F.Supp. 1532. Waverlee Homes sought to invoke the arbitration clause and compel arbitration. ***Id.*** The district court held that because it was a non-party to the contracts containing the arbitration clause, it lacked standing to compel arbitration. ***Id.*** at 1534. The Eleventh Circuit affirmed. ***Wilson v. Waverlee Homes, Inc.,*** 137 F.3d 40 (11th Cir. 1997).

¶83. However, a closer look at ***Wilson*** indicates that the case is clearly distinguishable from the present case. In ***Wilson***, the court found that the manufacturer could not compel arbitration for the following reasons:

> Here, however, there is no agency relationship between Waverlee and Hart's Mobile Home. In fact, the Waverlee warranty specifically disavows such a relationship. Nor is there corporate identity between them. In addition, the relevant issues are not already in arbitration between the parties to the agreements; nor are there allegations of joint misconduct by a party to the arbitration agreements and the nonparty.

***Wilson***, 954 F.Supp. 1535. In the case sub judice, there clearly is an agency relationship between Champion and Town & Country, Champion's warranty does not specifically disavow such a relationship, and the relevant issues are inescapably intertwined. ***Wilson*** can be further distinguished in that the mobile home seller, (who was the signatory in that case) Hart's Mobile Home, was not even a party to the lawsuit. ***Id.*** at 1532. Presiding Justice McRae's reliance on ***Wilson*** is misplaced. ¶84. Two years after affirming the district court in ***Wilson,*** the Eleventh Circuit in ***MS Dealer Serv. Corp. v. Franklin***, 177 F.3d 942 (11th Cir. 1999) once again visited this issue and joined the overwhelming majority of circuits that have addressed that issue. The Eleventh Circuit first noted that there were three theories under which a non-signatory could compel arbitration: (1) equitable estoppel, (2) agency theory, and (3) third-party beneficiary theory. ***MS***

*Dealer*, 177 F.3d 947-48. In that case, the court held that the nonsignatory could compel arbitration under the theory of equitable estoppel and did not get to the merits of the other two theories. ***Id.***

¶85. Mississippi federal courts have similarly dealt with this issue.

¶86. In ***Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.***, 957 F.Supp. 839 (S.D. Miss. 1997), Judge Barbour held:

> The Court finds that the doctrine of equitable estoppel should apply in cases in which a non-signatory seeks to enforce an arbitration agreement where the non-signatory is an agent of a signatory or where the claims against the non-signatory are "intimately founded in and intertwined with" the agreement containing the arbitration clause.

***Gulf Guar. Life***, 957 F. Supp. at 841-42 (citing ***Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.***, 10 F.3d 753, 758 (11th Cir. 1993)). The district court also rejected the plaintiff's argument that the claim was not based on the agreement containing the arbitration clause, but instead, based on an independent tort action for two reasons: first, the plaintiff alleged an agency relationship in its complaint; and second, the tort claim was not separate and independent because it necessarily rested on the validity of the contract claim. ***Id.*** at 842.

¶87. In ***Mississippi Fleet Card v. Bilstat, Inc.***, 175 F. Supp. 2d 894 (S.D. Miss. 2001), the District Court for the Southern District of Mississippi had a opportunity to revisit this issue, and came to the same conclusions. In ***Mississippi Fleet Card***, five different defendants who were not signatories to a processing agreement which contained an arbitration clause, attempted to compel arbitration of the claims asserted against them. ***Mississippi Fleet Card***, 175 F.Supp.2d at 900. The district court first discussed the doctrine of equitable estoppel as it applies to non-signatories attempting to compel arbitration as follows:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegation of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

***Id.*** (quoting ***Grigson v. Creative Artists Agency***, L.L.C, 210 F.3d 524, 527 (5th Cir. 2000), quoting ***MS Dealer Serv. Corp. v. Franklin***, 177 F.3d 942, 947 (11th Cir. 1999)). The district court then held that all five of the defendants could compel arbitration, under Mississippi law, because all claims asserted by the plaintiff against the non-signatory defendant either presume the existence of the written processing agreement or allege concerted misconduct by both the non-signatory defendants and the signatory defendant. ***Id.*** at 900-01.

¶88. In the case subjudice, all of claims of Parkerson against the Smiths, in their individual capacity, and against Champion, make reference to, arise out of, and presume the existence of a contract that contains the

arbitration clause. Further, the amended complaint sets forth the agency relationship between the signatory dealer, Town & Country, and the non-signatory manufacturer, Champion. Parkerson's claims are grounded in the contract of sale and her enumerated damages rely upon this contract of sale. I find the reasoning of the Mississippi federal courts persuasive and the Smiths and Champion, as non-signatory defendants, can compel arbitration through the theory of equitable estoppel.

### VII. WHETHER THE ARBITRATION CLAUSE IS UNENFORCEABLE BECAUSE PARKERSON DID NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVE HER CONSTITUTIONAL RIGHT TO A JURY TRIAL.

¶89. Parkerson argues that Article 3, Section 31 of the Mississippi Constitution guarantees more than just a jury trial, it guarantees that our courts shall remain open so that citizens have a remedy by due course of law. She also argues that, because of the potential that the front-loaded high cost of arbitration can deprive our citizens of that right, the courts must require a strong showing that the citizen has made a knowing, intelligent and voluntary waiver of the right to a jury trial.

¶90. Champion responds that the determinative issue is not whether Parkerson knowingly raised her federal or state constitutional rights to a jury trial, but simply, whether she has agreed to have her claims arbitrated. There is no right to a jury trial in a arbitral forum, as opposed to a judicial forum.

¶91. In ***Bank One v. Coates***, 125 F. Supp. 2d 819 (S.D. Miss. 2001), the District Court for the Southern District of Mississippi rejected an argument similar to Parkerson's as follows:

> Defendant contends that because the arbitration clause constitutes a waiver of his Seventh Amendment right to a jury trial, then the plaintiff must demonstrate that there was a "clear and unmistakable" waiver of this right. But that is not so. "[A] valid arbitration provision, which waives the right to resolve a dispute through litigation in a judicial forum, implicitly waives the attendant right to a jury trial." ***Marsh v. First USA Bank, N.A.***, 103 F.Supp.2d 909, 921 (N.D.Tex. 2000). The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes. ***Id.*** (quoting ***Cremin v. Merrill Lynch Pierce Fenner & Smith, Inc.***, 957 F.Supp. 1460, 1471 (N.D. Ill. 1997); see also ***Bosinger v. Phillips Plastics Corp.***, 57 F.Supp.2d 986 (S.D. Ca. 1999)("clear and unmistakable" standard not applicable to an individual's waiver of his or her own rights)(citing ***Wright v. Universal Maritime Servs.***, 525 U.S. 70, 119 S.Ct. 391, 396, 142 L.Ed.2d 361 (1998) ; ***Parsley***, 1998 WL 1572764 ("The 'loss of the right to a jury trial is a necessary and fairly obvious consequence of the agreement to arbitration'")(citation omitted); ***Burlington Northern RR Co. v. Soo Line RR Co.***, 162 B.R. 207, 214 (D. Minn. 1993)(noting that "[i]f [the Defendants were correct that a party's constitutional right to a trial by jury] presented a serious limitation on the duty to arbitrate, arbitration provisions would have to be narrowly construed").

***Bank One***, 125 F.Supp.2d at 834.

¶92. As was previously discussed in Issue V, Parkerson clearly agreed to arbitrate "any controversy or claim . . . arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising form an alleged tort, . . .. Language such as this as been deemed "a broad arbitration clause" by this Court. *See **Smith Barney***, 775 So.2d at

726.

¶93. Champion was not specifically referenced nor specifically excluded in the contract. However, Parkerson clearly agreed to arbitrate any controversy or claim, and that assent is manifested in the contract itself, and the principles of agency, contract and equity as have been discussed in previous sections. There is no constitutional right to a jury trial in an arbitral forum, any more than there is a constitutional right to a jury trial in chancery court.

¶94. For the foregoing reasons, I would find that the Magnuson-Moss Act does not supersede the Federal Arbitration Act. However, because the trial judge did not make findings of facts on this issue, nor did he discuss this issue in his final order, the question of the substantive unconscionability remains unresolved. I would remand for further proceedings as set forth in Issue IV above, so the trial judge can properly consider and make the record on this issue.

### PITTMAN, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶95. I am of the opinion that the Magnuson-Moss Warranty Act is not in sufficient conflict with the Federal Arbitration Act to warrant our holding that it supercedes the FAA. The reasoning in Justice Cobb's dissent on this matter is sound, and I am persuaded by the opinion of the Texas Supreme Court whose holding is contrary to the majority's ruling on this matter. *See **In re American Homestar of Lancaster, Inc.***, 50 S.W.3d 480 (Tex. 2001). However, I agree that the arbitration provisions in this contract and others like it may be unconscionable, particularly where up-front payments are required to be afforded a hearing before an arbitrator. Such a requirement is contrary to our policy that relief should be available to those who have been injured.

¶96. I write separately to discuss an issue Presiding Justice McRae addresses and Justice Diaz mentions in his opinion, but does not elaborate upon: whether Champion Homes can compel arbitration in this case.

¶97. This dispute arises from the formulation and breach of a contract between the contracts signatories: Apryl Parkerson and Town and Country Mobile Homes. This contract contains the only arbitration clause to be found in the exhibits before the Court. The only other party mentioned in this purchase contract is the financier, BankAmerica Housing Services, which is not a party to this suit. Champion Homes asserts it has the ability to compel arbitration because Parkerson asserts in her complaint that Town and Country was acting as an agent for Champion Homes. I reject this assertion in light of the fact that Champion Homes is not a signatory to the contract.

¶98. Arbitration is only available between the parties who choose to include it in their contract. It is not available to a third party who is not a signatory to the contract. How can it be said that Champion Homes bargained for an arbitration clause in a contract that it never signed? It follows that Champion Homes cannot reap the benefit of a bargain it never made. The theory of equitable estoppel considered by the Fifth Circuit in ***Grigson v. Creative Artists Agency***, ***L.L.C.*** 210 F.3d 524, 527 (5th Cir. 2000), is compelling insofar as recovery is allowed for breach of contractual warranties. However, instead of an action for breach of contract, I find Parkerson's remedy is better found in a products liability suit against Champion Homes as the mobile home's manufacturer.

¶99. Champion Homes cannot use this purchase contract to force Apryl Parkerson into arbitration simply because it did not execute the contract. Therefore, I concur in part and dissent in part.

**WALLER, J., JOINS THIS OPINION. COBB AND CARLSON, JJ., JOIN IN PART.**

1. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

2. *Shearson/Amer. Exp., Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

3. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

4. The United States Supreme Court has further stated:

> There is no reason to depart from these guidelines where a party bound by an arbitration agreement raises claims founded on statutory rights. Some time ago this Court expressed "hope for [the Act's] usefulness both in controversies based on statutes or on standards otherwise created," and we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. at 626-27, 105 S.Ct. at 3354 (citations omitted).

5. In her complaint, Parkerson demands judgment in the amount of $225,982.45, plus punitive damages. According to AAA's fee schedule, where the amount of claim is over $150,000, up to $300,000, the initial filing fee-to be paid by the person filing the claim-is $2,750 and the case service fee is $1,000. The cost of the arbitrator is borne equally by the parties, as is the cost of the hearing room. The witness expenses must be paid by the party producing the witness. The parties are required to deposit in advance the expected costs of the arbitration. If payments are not made, the proceedings may be suspended or terminated.

6. Under Mississippi law, if the court finds all, or any part of a contract unconscionable, the court has several options:

> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Miss. Code Ann. § 75-2-302 (1972).