952 So.2d 195 (2006)
Michelle FRADELLA and GBS Properties, LLC, d/b/a Prudential Gardner Realtors ("Prudential Gardner"), Appellants,
v.
James E. SEABERRY and Wife, Rosella M. Seaberry, Appellees.
No. 2005-CA-00404-COA.
Court of Appeals of Mississippi.
April 11, 2006.
Rehearing Denied August 1, 2006.
*197 Richard Eugene Cassady, Frank D. Montague, Hattiesburg, W. Edward Hatten, Gulfport, attorneys for appellants.
Richard C. Fitzpatrick, attorney for appellees.
EN BANC.
KING, C.J., for the Court.
¶ 1. Michelle Fradella (Fradella) and GBS Properties, LLC d/b/a Prudential Gardener Realtors (Prudential Gardner) appeal the decision of the Pearl River County Chancery Court denying their motion to compel arbitration. Finding no error, we affirm and remand to the trial court.

STATEMENT OF FACTS
¶ 2. On February 29, 2004, James and Rosella Seaberry (Seaberrys), acting through Fradella, an agent with Prudential Gardner Realtors, submitted a written offer to purchase a house and 18 acres of land at 31 Global Lane in Picayune, Mississippi, from Sammy and Joy Germany (Germanys). Because the Germanys were also represented by Fradella, the Seaberrys signed a dual agency acceptance form that day. On March 2, 2004, the Germanys submitted a written counteroffer to sell to the Seaberrys 16.68 acres and the house. The Seaberrys executed a written acceptance of the counteroffer on March 3, 2004. On April 19, 2004, the Seaberrys executed a contract for the sale and purchase of real estate (Seaberry-Germany contract) of the Global Lane property.[1] The legal description of the property set forth in the Seaberry-Germany contract was "As Per Title". Each of these documents was a realty form prepared by Fradella.
¶ 3. The Seaberrys closed on the Picayune property on April 26, 2004. After the closing, the Seaberrys discovered several alleged discrepancies between what they bargained for and what they received. Aggrieved by these alleged discrepancies, the *198 Seaberrys initiated suit on September 28, 2004, in the Pearl River County Chancery Court against the sellers, Fradella, Prudential Gardner, and several other parties involved in their purchase. Aggrieved by the chancellor's denial of their motion to compel, Fradella and Prudential Gardner raise two issues on appeal:
1. WHETHER THE LOWER COURT ERRED IN DENYING THE MOTION TO COMPEL ARBITRATION, WHEN IT FOUND THAT PARAGRAPH 11 AND PARAGRAPH 26 OF THE CONTRACT CREATED AN AMBIGUITY, THEREBY RENDERING THE MANDATORY ARBITRATION CLAUSE OF THE CONTRACT INEFFECTIVE; AND
2. WHETHER THE LOWER COURT ERRED WHEN IT FOUND THAT NEITHER FRADELLA NOR PRUDENTIAL GARDNER ARE SIGNATORIES TO THE CONTRACT, THEREFORE PREVENTING THEM FROM OBTAINING THE BENEFIT OF THE MANDATORY ARBITRATION CLAUSE OF THE CONTRACT SIGNED BY THE SEABERRYS.
Finding no error, the chancellor's denial of the motion to compel arbitration is affirmed.

STANDARD OF REVIEW
¶ 4. A lower court's grant or denial of a motion to compel arbitration is reviewed de novo. Pre-Paid Legal Services, Inc. v. Battle, 873 So.2d 79, 82(¶ 8) (Miss. 2004).

DISCUSSION
¶ 5. This case presents us with a unique factual scenario. Fradella and Prudential Gardner, who were not parties to the Seaberry-Germany contract, seek to enforce an arbitration clause contained within paragraph 26 of the Contract. Paragraph 26 reads:
MANDATORY ARBITRATION: Both buyer and seller (hereinafter "parties") acknowledge, understand and agree that (1) may controversy, claim, action or inaction arising out of, or relating to, that "purchase" set out herein, as against the listing company or selling company and/or their agents or representatives (hereinafter "company") involved in this transaction shall be resolved by arbitration administered by the American Arbitration Association in accordance with its arbitration rules, and (2) judgment on the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction, and (3) the arbitration proceeding shall be conducted within the county in which the dispute arose or such other location as agreed upon by the parties, and (4) if fault is found, the award of damages will conform to the terms and conditions of the "purchase" and (5) this transaction involves interstate commerce such that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (1947 as amended) shall govern the interpretation and enforcement of this agreement along with all claims between or among the parties and the company(ies) involved in this transaction.
The Federal Arbitration Act (FAA), 9 U.S.C. § 2 (2000), provides that:
A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . or refusal, shall be valid, irrevocable, and enforceable, *199 save upon such grounds as exist at law or in equity.
¶ 6. There is a liberal federal policy favoring arbitration agreements, based on section 2 of the FAA. Terminix International Inc. v. Rice, 904 So.2d 1051, 1054(¶ 7) (Miss.2004). Therefore, we will always respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution. Id. However, arbitration is contractual by nature and a party cannot be required to submit to arbitration any dispute to which he or she has not agreed so to submit. Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 776 (2nd Cir.1995). "Thus while there is a strong and liberal federal policy favoring arbitration agreements, such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." Id.
¶ 7. In considering motions to compel arbitration, this Court must first determine whether the parties' dispute is within the scope of a valid arbitration agreement. Terminix Intern., Inc., 904 So.2d at 1055(¶ 8). The next step, then, is to consider whether legal constraints external to the parties' agreement foreclosed arbitration of those claims. Id. (citing Sullivan v. Mounger, 882 So.2d 129, 132(¶ 14) (Miss.2004)). In order to determine whether legal constraints exist which would preclude arbitration, courts should generally apply ordinary state-law contract principles. East Ford, Inc. v. Taylor, 826 So.2d 709, 713-14(¶ 12) (Miss.2002).
¶ 8. Although Fradella and Prudential Gardner treat paragraph 26 as a provision of the Seaberry-Germany contract, we find it to be a separate contract all together. The essence of the Seaberry-Germany contract was for the sale of land from the Germanys to the Seaberrys. Paragraph 26, however, mandates arbitration between either the Germanys or the Seaberrys against Fradella or Prudential Gardner, non-parties to the Seaberry-Germany contract. This paragraph was non-essential to the heart of the Seaberry-Germany contract, and was solely for the benefit of the non-party dual agent. It must thus be analyzed as a separate contract, triggering an elementary contract formation analysis.
¶ 9. In applying state-law contract principles, Mississippi requires that parties to a contract first come to an agreement, or "meeting of the minds," on the essential elements of the contract in order for it to be enforceable. Hunt v. Davis, 208 Miss. 710, 45 So.2d 350, 352 (1950). More importantly, an enforceable contract must contain an offer, acceptance, and consideration. Gatlin v. Methodist Medical Center, Inc., 772 So.2d 1023, 1029(¶ 20) (Miss.2000).
¶ 10. The totality of the arbitration contract which is the basis of this action is:
MANDATORY ARBITRATION: Both buyer and seller (hereinafter "parties") acknowledge, understand and agree that (1) may controversy, claim, action or inaction arising out of, or relating to, that "purchase" set out herein, as against the listing company or selling company and/or their agents or representatives (hereinafter "company") involved in this transaction shall be resolved by arbitration administered by the American Arbitration Association in accordance with its arbitration rules, and (2) judgment on the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction, and (3) the arbitration proceeding shall be conducted within the county in which the dispute arose or such other location as agreed upon by the parties, and (4) if fault is found, the award of damages will *200 conform to the terms and conditions of the "purchase" and (5) this transaction involves interstate commerce such that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (1947 as amended) shall govern the interpretation and enforcement of this agreement along with all claims between or among the parties and the company(ies) involved in this transaction.
¶ 11. The insertion of paragraph 26 into the Seaberry-Germany contract represented an offer by Fradella and Prudential Gardner to enter into individual arbitration agreements with the Seaberrys and the Germanys. Both the Seaberrys and the Germanys indicated their willingness to enter into individual arbitration agreements with Fradella and Prudential Gardner by initialing the arbitration contract. In addition to a willingness to enter into a contract, there must also be some mutual benefit, or consideration, for the contract. "Consideration may be said to be what is actually given or suffered and accepted for a promise . . . the price bargained and paid for a promise . . . something given in exchange for the promise. Covington Cadillac Co. v. South Aire, Inc., 242 Miss. 716, 136 So.2d 866, 870 (1962) (citing 12 Am.Jur., Contracts, § 75, p. 568). Sufficient consideration may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other. Id.
¶ 12. In the case sub judice, no consideration was given by Fradella and Prudential Gardner to the Seaberrys or Germanys for the arbitration agreements. This separate arbitration contract was contained within the Seaberry-Germany contract, to which neither Fradella nor Prudential Gardner were parties. The consideration given from the Seaberrys to the Germanys, and from the Germanys to the Seaberrys, does not transfer to the separate arbitration agreement. Both Fradella and Prudential Gardner stand to benefit from the arbitration agreement, while neither offer anything in exchange to the Seaberrys or Germanys that may be classified as consideration. In order for the arbitration agreement to be enforceable, Fradella and Prudential Gardner must have some forbearance, detriment, loss or responsibility given or undertaken. Since there was none, this arbitration contract is void on its face.
¶ 13. The dissent evidently misses the mark in attempting to create consideration for the arbitration agreement. The dissent attempts wrongly to identify several matters which it calls consideration for the arbitration agreement.
¶ 14. The Germanys employed Prudential and Fradella to list and sell their real estate. As compensation for the activities associated with that listing and sale, Prudential and Fradella were to receive a commission. If the buyer of this real estate was found by another real estate agency and agent, then that commission would have to be split with the outside agency. If however, Prudential and Fradella were able to represent both the buyer and the seller, then they would be entitled to retain the entire commission.
¶ 15. Fradella and Prudential were also employed to assist the Seaberrys in finding a home. For those efforts, Fradella and Prudential were to receive a percentage of the sales commission. As further compensation for those activities, by getting the Seaberrys to agree to a dual agency, Fradella became entitled to that portion of the commission which the listing broker and agent would receive, as well as that portion of the sales commission which the selling broker and agent were entitled to receive.
*201 ¶ 16. All of the things which the dissent stretches to call consideration were activities required under the earlier agreement. The arbitration agreement was a new contractual matter which was later injected by Fradella and Prudential. For this new contractual matter, neither Fradella nor Prudential was to provide the Seaberrys any additional services. This is by definition a failure of consideration.
¶ 17. Therefore, the judgment of the chancery court is affirmed, and this case is remanded to the trial court for further proceedings.
¶ 18. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT DENYING THE MOTION TO COMPEL ARBITRATION IS AFFIRMED AND THIS CASE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
MYERS, P.J., AND ROBERTS, J., CONCUR. IRVING, J., CONCURS IN RESULT. BARNES, J., CONCURS IN PART AND IN RESULT. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., SOUTHWICK, CHANDLER AND ISHEE, JJ.
GRIFFIS, J., dissenting:
¶ 19. I respectfully dissent.
¶ 20. The majority begins its discussion by saying that Fradella and Prudential Gardner were not parties to the contract. However, a detailed review of the contract indicates that Fradella and Prudential Gardner had several duties, obligations and responsibilities pursuant to the contract. Indeed, the contract plainly recognized their efforts and provided that Prudential Gardner and Fradella would be paid a commission. It also provided that Prudential Gardner would receive and hold the earnest money deposit, acting as trustee, and it specified what would be done with the deposit. The most telling provision of the contract was Paragraph 18, which stated:
DISCLOSURE OF AGENCY RELATIONSHIP: The parties confirm, in connection with the transaction, that Listing Firm and the Selling Firm have represented the party or parties indicated below, and that these relationships were disclosed to the parties in writing at or before the time specific real estate assistance was provided. Notwithstanding the provisions of Paragraph 9 of this Purchase Agreement relating to the payment of commissions, the parties agree that . . . :
C. The Listing Firm and its sales persons represent both the Seller and the Purchaser as dual agents by mutual agreement and all parties have signed and understand the Dual Agency Confirmation form attached and made a part of this Purchase Agreement.
The record also contains the dual agency confirmation form that was signed by the Seaberrys.
¶ 21. Despite these provisions, the majority finds a lack of consideration by Fradella and Prudential Gardner and concludes that "this arbitration agreement/contract is void on its face." The facts in the record simply support the opposite conclusion and do not support the majority's conclusion. Further, I am concerned that the majority's conclusion requires that this Court travel a road that neither the chancellor nor the Seaberrys have traveled or have even asked this Court to travel. The majority's course is treacherous and many hidden perils await.
¶ 22. The majority's rendition of the facts clearly indicate that Fradella and *202 Prudential Gardner were employed by the Seaberrys to assist them in their effort to purchase real property. The Seaberrys' sworn complaint indicates that the Seaberrys engaged Fradella's "services for the purpose of locating a home and acreage to purchase. . . ." The complaint details Fradella's efforts to present or show available property to the Seaberrys. The complaint includes all of Fradella's efforts during the contract negotiations.
¶ 23. The record is filled with references to the services that Fradella and Prudential Gardner provided to the Seaberrys, while acting as their real estate agent and by assisting them in the location and purchase of property. The actions of Fradella and Prudential Gardner were sufficient to serve as valuable consideration for the promises, duties and obligations that were set forth in the contract. If we accept the majority's conclusion, we will invalidate almost every real estate contract in this state. We could go further and conclude that the real estate agents are not entitled to their commissions because their efforts in the sale or purchase of real estate are not valuable consideration. The majority's conclusion that there was no consideration given for the arbitration agreement is inconsistent with the record before this Court.
¶ 24. We often decline to review issues that are presented for the first time on appeal. See, e.g., Parker v. Miss. Game & Fish Comm'n, 555 So.2d 725, 730 (Miss. 1989) (well stated principle that issues not presented at trial cannot be raised on appeal); Crenshaw v. State, 520 So.2d 131, 134-35 (Miss.1988) ("trial judge cannot be put in error on a matter which was not presented to him for decision"); Eagle Pac. Ins. Co. v. Quintanilla, 923 So.2d 266 at (¶ 12) (Miss.Ct.App.2006) (decline to review on appeal because argument not presented to trial court); Jones v. State, 915 So.2d 511, 513(¶ 7) (Miss.Ct.App.2005) ("Questions will not be decided on appeal which were not presented to the trial court and that court given an opportunity to rule on them. In other words, the trial court cannot be put in error, unless it has had an opportunity of committing error."). Here, however, the majority does not seek to find reversible error in a matter not presented to the trial court; instead, the majority looks to matters that were neither argued to the trial court nor this Court to find some basis to affirm the trial court's ruling.
¶ 25. In response to the motion to compel arbitration, the Seaberrys made four arguments:
1. There is no valid enforceable arbitration agreement.
2. Even if agreed to, the arbitration clause, is unenforceable because it is unconscionable.
3. Even if the arbitration clause is valid, Fradella and Prudential cannot take advantage of it because they are not signatories to the document containing the arbitration clause.
4. Even if the arbitration clause is valid and part of a binding contract and Fradella and Prudential can assert it, this litigation is specifically authorized by the provisions of Paragraph 11 concerning breach by the seller.
¶ 26. The first issue presented appears to offer some basis for the majority's holding. The holding fails, however, when the Seaberrys' argument is reviewed. Before the trial court and this Court, the Seaberrys argued that the agreement was not enforceable because it had to be signed by all parties, and it was not. They also claimed that the agreement contained a specific deadline before which the agreement had to be accepted. Because the agreement was not signed by the deadline, *203 they contend it was not enforceable. Failure or lack of consideration is nowhere in the Seaberrys' response to the motion to compel arbitration or in the chancellor's ruling. Likewise, the issues raised by the Seaberrys in their briefs to this Court do not mention or argue failure or lack of consideration. There is simply no mention of it anywhere, except by the majority.
¶ 27. The chancellor denied the motion to compel arbitration and held:
The decision and language of the Mississippi Supreme Court in the case of Parkerson v. Smith, 817 So.2d 529(¶ 19) (Miss.2002), though deciding from a factual situation substantially different from that here, nevertheless speaks directly and emphatically to a point which is precisely the same as exists here, i.e., who are the parties signatory to the document containing the arbitration clause. With clarity and without equivocation our Supreme Court stated that one who is not a signatory to the document containing an arbitration clause cannot take advantage of the arbitration clause to compel arbitration.
Here Fradella and Prudential, who indisputably are not a [sic] signatories to the CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE, cannot take advantage of the cited arbitration clause contained therein.
Further, in light of the provisions in that CONTRACT set forth in paragraph 11, "Breach of Contract", providing for resort to litigation in a court of competent jurisdiction, it most certainly is not clearly shown that Seaberry[s] intended to be foreclosed of their right to have any dispute settled by a trial by jury. At the very least, that CONTRACT is fatally flawed for patent ambiguity insofar as effectiveness of the arbitration clause is concerned.
¶ 28. I begin with the question of ambiguity. I do not find the ambiguity to which the chancellor refers in his ruling. Paragraphs 11 and 26 are not in conflict. Paragraph 11 indicates that "[s]pecific performance is the essence of the contract." It then proceeds to discuss the appropriate remedies for a breach of the contract by the buyer or the seller. In other words, if the buyer is in breach, the seller may accept liquidated damages, sue for damages or sue for specific performance. If the seller is in breach, the buyer may accept the return of his earnest money deposit, sue for damages or sue for specific performance.
¶ 29. Paragraph 26 has nothing to do with a breach of the contract by the buyer or the seller. Instead, it provides that the buyer and seller agree to arbitrate any claim that they may have against the realtor, either the agent (Fradella) or the listing company (Prudential Gardner). I find no ambiguity between these paragraphs. Immediately following paragraph 26, RS (Rosella Seaberry) signed her initials. The very next line contains the initials of RS (Rosella Seaberry) and JS (James Seaberry). I believe it to be manifest error to find that there was an ambiguity in the contract or to say that the Seaberrys did not agree to be bound by paragraph 26, "Mandatory Arbitration," for any claims they brought against Fradella or Prudential Gardner.
¶ 30. The chancellor began his conclusions of law stating that neither Fradella nor Prudential Gardner executed the document. The chancellor cited Parkerson for the proposition that "[w]ith clarity and without equivocation our Supreme Court stated that one who is not a signatory to the document containing an arbitration clause cannot take advantage of the arbitration clause to compel arbitration." Any review of Parkerson begins with the understanding *204 that it was a plurality decision by the Supreme Court, with four separate opinions.
¶ 31. In Parkerson, Ms. Parkerson bought a mobile home. She signed a document entitled "Retail Installment Contract, Security Agreement, Waiver of Trial by Jury and Agreement to Arbitration or Reference or Trial by Judge Alone." Ms. Smith signed it for the seller, Town & Country Mobile Homes, Inc. The arbitration clause read in part:
Dispute Resolution. Any controversy or claim between or among you [Ms. Parkerson] and me [Ms. Smith and Town & Country] or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO A TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.
Parkerson, 817 So.2d at 531(¶ 3).
¶ 32. Ms. Parkerson brought a claim against the manufacturer of the mobile home, Champion Home Builders Co., Inc. Id. at (¶ 1). Champion sought the benefit of the arbitration clause. Justice McRae wrote:
Champion was not a party to the contract containing the arbitration provision, and therefore may not invoke the arbitration clause to which it was never a party. To hold otherwise would allow a manufacturer which is not a signatory to an agreement to assert rights found in that agreement. The Wilson [v. Waverlee Homes, 127 F.3d 40 (11th Cir. 1997)] court declined to make such a broad interpretation, as do we.
Parkerson, 817 So.2d at 535(¶ 19). Indeed, Champion was not mentioned in the arbitration clause.
¶ 33. Such is not the case here. Paragraph 26, "Mandatory Arbitration," specifically provides for arbitration as the means of resolution of any claims that either the buyers or the sellers have against Fradella or Prudential Gardner. These factors clearly distinguishable from Parkerson. In my opinion, Parkerson provides no guidance to the outcome of this case and it was manifest error for the chancellor to rely on Parkerson for its ruling.
¶ 34. In Smith Barney, Inc. v. Henry, 775 So.2d 722, 723(¶ 2) (Miss.2001), LaFare Hilliard had two securities accounts with Smith Barney, Inc. The account agreements provided that all claims would be subject to arbitration and that the terms were binding on her heirs and successors. Id. at 723(¶ 3). After Hilliard's death, Ms. Henry, Hilliard's heir, brought a legal action over whether the Smith Barney accounts were improperly converted, and the suit included claims for conversion, breach of fiduciary duty, and conspiracy. Id. at 723-24 (¶¶ 4-6). Smith Barney sought to compel arbitration, which the circuit court denied. Id. at 724(¶ 6).
*205 ¶ 35. The question on appeal was whether the claimant, as a non-signatory of the agreement, was bound by the arbitration provision. Id. at 724(¶ 7). The supreme court held:
Henry argues that she is a non-signatory, unintended, third-party beneficiary of the agreements and therefore not bound by the arbitration clauses. The agreements plainly state that they are binding on Hilliard's "heirs, successors and administrators. . . . "
Other states have interpreted nearly identical agreements in favor of arbitration. In Collins v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 561 So.2d 952, 956 (La.Ct.App.1990), the Louisiana Court of Appeals held that the heirs and successors of a deceased customer of a brokerage firm were bound by the arbitration agreement signed by the customer and the firm. The court stated:
We find no merit in plaintiff's [sic] argument that they are not bound by the arbitration clause because the Customer Agreement was not signed by them, but by their brother. . . . By its own terms, the agreement applies to the successors and assigns of the customer. Moreover, we have held that a written agreement to arbitrate does not necessarily have to be signed by both parties.

Collins, 561 So.2d at 955. Also, in Herbert v. Superior Court, 169 Cal.App.3d 718, 215 Cal.Rptr. 477 (Cal.Ct.App.1985), the California appellate court held that a widow and her children were bound by an arbitration agreement signed by the children's father which purported to bind his "heirs." Likewise, in this case, Henry is an heir of Hilliard.
In the case at hand, we are dealing with an arbitration clause in which Henry is a successor under the terms of Hilliard's will, and as such, she is specifically covered by the agreement. According to the terms of the agreement, Henry is not required to be a signatory in order to be bound by the arbitration clause. As a successor of Hilliard, Henry is covered by the arbitration clause of the client agreements.
Smith Barney, Inc., 775 So.2d at 727 (¶¶ 18-20).
¶ 36. Recently, the Mississippi Supreme Court announced a similar decision in Terminix Int'l, Inc. v. Rice, 904 So.2d 1051, 1057-58 (¶¶ 27-29) (Miss.2004). The court held:
Cynthia did not sign the agreement with Terminix. Thus, the Rices claim, she is not bound by the arbitration agreement.FN3 The United States Court of Appeals for the Fifth Circuit recently addressed this issue in Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260 (5th Cir.2004). In Bailey, a plaintiff (Mrs. Phinizee) insisted she could not be compelled to arbitrate her claim because her husband signed the agreement, but she had not. Id. at 266. The court rejected this argument and held:
FN3. It is doubtful that the Rices actually hope to succeed with this argument, since Cynthia would have no standing or right to sue Terminix at all. Terminix would owe her no contractual duty and thus could not be liable to her for contractual damages.
It does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. (We have made) clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency.

Id. (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d *206 Cir.1995 1995) (citations & quotations omitted)).
The Bailey court held that Mrs. Phinizee was bound to the arbitration agreement under ordinary principles of contract law, including equitable estoppel. The court stated: In the arbitration context, the doctrine [of estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.

Id. at 268 (quoting Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir.2000) (citations & quotations omitted)).
We adopt the same principles announced by the court in Bailey, and hold that Mrs. Rice is bound by the arbitration clause in the contract signed by Dr. Rice.
Rice, 904 So.2d at 1057-58 (¶¶ 27-31).
¶ 37. The most convincing analysis comes from the Thomson  CSF, S.A. opinion, where the federal circuit court held:
I. Traditional Bases For Binding Nonsignatories

This Court has recognized a number of theories under which nonsignatories may be bound to the arbitration agreements of others. Those theories arise out of common law principles of contract and agency law. Accordingly, we have recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel. The district court properly rejected each of these traditional theories as sufficient justification for binding Thomson to the arbitration agreement of its subsidiary.
Thomson-CSF, S.A., 64 F.3d at 776. Here, incorporation by reference, agency and estoppel support Fradella's and Prudential Gardner's motion to compel arbitration.
¶ 38. In conclusion, I find that the parties agreed to the language of the contract. There is no doubt that the Seaberrys agreed to this arbitration provision. They initialed right below it. There is simply no basis for this Court to find that there was a lack of consideration. I am of the opinion that the legal precedents that are applicable to this case require that we reverse and render the decision of the Chancery Court.
¶ 39. Accordingly, I respectfully dissent.
LEE, P.J., SOUTHWICK, CHANDLER AND ISHEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The contract is a standard Mississippi Association of Realtors contract for the sale of land supplied to the parties by their agent, Fradella.